UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARCUS DONTE MIDDLEBROOK,

                    Plaintiff,

v.

KELLY M. WELLMAN et al.,

                    Defendants.

_____/

Case No. 2:23-cv-202

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.2.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties

to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying

these standards, the Court will dismiss Plaintiff's action for failure to state a claim.

## Discussion

### I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility

This is the third of three lawsuits that Plaintiff filed relating to his diet at AMF. In the first

lawsuit, *Middlebrook v. Wellman et al.*, No. 2:21-cv-208 (W.D. Mich.) (the "soy-diet" case),

Plaintiff sued Kelly M. Wellman and Patricia M. Lewis for violation of his Eighth Amendment

rights and violation of his rights under the Religious Land Use and Institutionalized Persons Act.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017)
(concluding that, when determining which parties are required to consent to proceed before a
United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the
United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a
screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c));
*Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary
for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207
n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning
in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Wellman and Lewis violated those rights, Plaintiff contended, by compelling him to eat a soy-based religious diet. The case was dismissed on summary judgment by judgment entered February 1, 2023. Order, *Middlebrook v. Wellman*, No. 2:21-cv-208, 2023 WL 1431961 (W.D. Mich. Feb. 1, 2023) (adopting report and recommendation issued on January 3, 2023, 2023 WL 2465551).

Plaintiff filed the second lawsuit during September of 2023. In that case, *Middlebrook v. Pelto*, No. 2:23-cv-173 (W.D. Mich.), Plaintiff sued Ms. Wellman's counsel from the soy-diet case, Jessica E. Pelto. Plaintiff claimed that Attorney Pelto violated Plaintiff's privacy by using laboratory test results as part of Ms. Wellman's defense without Plaintiff's consent. Those results showed—or at least supported the conclusion—that Plaintiff did not, in fact, suffer from a soy allergy. Those results substantially undercut Plaintiff's claims in the soy-diet case.

The constitutional violations at the heart of Plaintiff's suit against Attorney Pelto were not entirely clear. Essentially he claimed some sort of privacy right in those medical records. The Court explained the several reasons that the disclosure of Plaintiff's medical records in the context of the lawsuit did not violate Plaintiff's rights. *See Middlebrook v. Pelto*, No. 2:23-cv-173, 2023 WL 7144601, at *3–5 (W.D. Mich. Oct. 31, 2023).

In the present suit, in his initial complaint, Plaintiff named the following AMF officials as Defendants: AMF Dietician Kelly M. Wellman, AMF Nurse Practitioner Patricia M. Lewis, and AMF Healthcare Medical Record Staff Members. Plaintiff essentially extends the claims he raised against Attorney Pelto to Defendants Wellman and Lewis and any other medical records staff that may have played a role in the disclosure. The crux of Plaintiff's initial complaint is as follows:

> Defendants Wellman, Lewis and AMF Healthcare Medical Records staff members caused several injuries to Plaintiff's federal lawsuit, where they allowed Jessica E. Pelto to present[] unknown evidence/illegal evidence against Plaintiff where he cannot confirm or deny that was actually his blood tested and used during summary judgment for a material fact to secure a victory, which caused pain, suffering,

> physical [and] mental anguish, mental distress, mental suffering, emotional distress
> and emotional harm.

(Compl., ECF No. 1, PageID.12–13, ¶ 37.) Although Plaintiff goes on for pages and pages, in summary, Plaintiff contends that it was wrong for Lewis to test his blood relating to his claim of a soy allergy and then wrong for her to permit Wellman or the attorneys for Lewis or Wellman to find out about it, and wrong for all of them to use those test results to defeat his claim that his soy allergy rendered the MDOC's soy-based religious diet a violation of his Eighth Amendment and RLUIPA rights. Plaintiff initially sought hundreds of thousands of dollars in damages for these wrongs.

On November 14, 2023, Plaintiff filed an amended complaint in this action. (ECF No. 8.) Plaintiff also filed a motion seeking leave to file the amended complaint. (ECF No. 9.)

Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure permits as a matter of right the filing of an amended pleading until 21 days after a responsive pleading is filed. Defendants have not yet been served and they have not filed a responsive pleading. Therefore, Plaintiff is permitted to file his amended pleading as of right. The Clerk has already docketed the amended complaint. Accordingly, the Court will deny Plaintiff's motion seeking leave to file the amended complaint as moot.

The facts alleged in the amended complaint are essentially the same as those alleged in the initial complaint. There are a few key differences. First, Plaintiff has named only Defendants Kelly and Wellman in the amended complaint. Second, Plaintiff has clarified that he is raising claims under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. Third, Plaintiff has dropped his claims under the Michigan Constitution or state law. And, fourth, Plaintiff has reduced the amount of damages he claims to $150,000.00.

A few days after Plaintiff filed his first amended complaint (ECF No. 8), he filed a document seeking to replace three pages of his amended complaint with new "correct[ed]" pages. (ECF No. 11.). In the three new pages, Plaintiff does not add new allegations regarding events that occurred after the complaints were filed; he simply changes some of the language he uses to describe the conduct already at issue. As such, Plaintiff's filing appears to be best described as an "amendment" to his amended complaint. Because Plaintiff has already used his one allowed "matter of course" amendment, Plaintiff must obtain leave of court to file the amendment to his amended complaint. Fed. R. Civ. P. 15(a)(1). Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Phillips-Addis v. Bottrell*, No. 1:20-cv-620, 2020 WL 7053649, at *6 n.3 (W.D. Mich. Dec. 2, 2020) (stating "Rule 15(d) affords courts the same level of discretion to permit supplements that Rule 15(a) affords to permit amendments").

In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182. The differences between the allegations in Plaintiff's first amended complaint and the proposed "amendment" are subtle. The Court does not see any ground to conclude that justice does not favor allowing this amendment. Accordingly, the complaint that the Court is preliminarily reviewing is the first amended complaint (ECF No. 8), as modified by the "amendment" (ECF No. 11).

Most of the allegations in the initial complaint are repeated in the amended complaint and amendment. The basic facts alleged are certainly identical. The only differences appear in Plaintiff's conclusory statements regarding the illegality of Defendants' actions.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Fourth Amendment

Plaintiff's complaint suggests that Defendants' conduct with regard to the blood test and results of the blood test violated any number of constitutional protections. He specifically mentions the Fourth Amendment protection against unreasonable searches and seizures. (Amendment, ECF 11-1, PageID.75, 76; Am. Compl., ECF No. 8, PageID.54, 56.)

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim regarding a prison official's search of a prisoner's cell. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Supreme Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Perhaps different treatment is justified when drawing and testing a prisoner's blood because it is sufficiently more invasive than a cell search. *See, e.g.*, *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995) (stating "[c]ertainly *Hudson* does not establish that the interior of one's body is as open to invasion as the interior of one's cell"). But the federal courts, generally, have concluded otherwise. For example, the Supreme Court has characterized the intrusion on privacy inherent in compelled provision of blood, breath, and urine samples in the employment context as "minimal." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989). And in *Sparks*, despite the Seventh Circuit's stated distinction between a prisoner's body and his cell, the court allowed the use of a catheter for the purpose of extracting urine from a prisoner's bladder. 71 F.3d at 260–62. Indeed, courts have allowed blood draws from prisoners without warrants in many circumstances. *See, e.g.*, *Harris v. Manlove*, 799 F. App'x 423, 424–25 (7th Cir. 2020) (consent given for blood draw and testing for HIV infection, but blood was drawn and tested for hepatitis without consent); *Whitfield v. Dretke*, 186 F. App'x 496, 497–98 (5th Cir. 2006) (holding that taking blood samples from a prisoner for a DNA collection program without a warrant is reasonable under the Fourth Amendment); *Roe v. Marcotte*, 193 F.3d 72 (2nd Cir. 1999) (same).

Importantly, Plaintiff's blood draw was entirely consensual. He alleges that it was a regular part of his chronic care regimen. He does not so much object to the blood draw itself, but to the testing of that blood relating to his soy allergy claim. Plaintiff's objection to the testing of his blood for that purpose in entirely disingenuous. He claims in the soy-diet case that these same Defendants failed to provide him appropriate medical care in relation to his claim that he was allergic to soy,

yet he now claims that it was a violation of his privacy to test his blood for the very allergy he claimed to suffer. It is not unlike a prisoner suing for failure to provide care for a broken leg, but claiming he has a Fourth Amendment right to refuse an x-ray to confirm the claim.

Plaintiff has failed to state a claim that the Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures when they drew and tested his blood for an allergy of which he complained.

### B.    Eighth Amendment

Plaintiff raised an Eighth Amendment claim in the soy-diet case. The amended complaint purports to raise an Eighth Amendment claim in this case as well. And Plaintiff does describe Defendants' conduct as "cruel" and "unusual." (Am. Compl., ECF No. 8, PageID.57, ¶¶ 61–62.)

Plaintiff's amended complaint appears to be an attempt to bring back into dispute the Eighth Amendment claims that were finally resolved in favor of Defendants Wellman and Kelly in the soy-diet case. (*Id.*, PageID.57–58, ¶63.) The doctrine of claim preclusion, sometimes referred to as *res judicata*, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit

involved the same claim or cause of action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

The prerequisites for application of the claim preclusion doctrine are present here. The soy-diet case Eighth Amendment claim against Defendants Wellman and Kelly was dismissed because there was no genuine issue of material fact—Plaintiff did not have a serious medical need and the Defendants were not deliberately indifferent to Plaintiff's medical needs. *Middlebrook v. Wellman*, No. 2:21-cv-208, 2023 WL 2465551, at *2 (W.D. Mich. Feb. 1, 2023). The grant of summary judgment under Rule 56 is a judgment on the merits. *See, e.g., Helfrich v. Metal Container Corp.*, 11 F. App'x 574, 576 (6th Cir. 2001).

Plaintiff's claims in this suit are raised against the same parties. And, finally, to the extent the present suit attempts to resurrect the same soy diet deliberate indifference claims, it very obviously involves the same claims and cause of action as the soy-diet case.

For all of those reasons, to the extent Plaintiff is asking the Court to revisit the Eighth Amendment claim he raised in the soy-diet case, those claims are barred by res judicata. An action that is barred by res judicata is legally frivolous. *See, e.g.*, *Taylor v. Reynolds*, 22 F. App'x 537, 538 (6th Cir. 2001); *Hill v. Elting*, 9 F. App'x 321 (6th Cir. 2001). Accordingly, these claims are properly dismissed on preliminary review under 28 U.S.C. §§ 1915(e) and 1915A, as well as 42 U.S.C. § 1997e.

To the extent Plaintiff's Eighth Amendment focus is the blood draw itself—or the disclosure of the results—his claim fails as well. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison

officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

A blood draw is a routine procedure. *See Schmerber v. California*, 384 U.S. 757, 771 n. 13 (1966) (citing *Breithaupt v. Abram*, 352 U.S. 432, 436 (1957)). Whether Plaintiff complains about the drawing of his blood or the disclosure of the results, the conduct described is not the unnecessary and wanton infliction of pain. Any such Eighth Amendment claim, therefore, is properly dismissed for failure to state a claim.

### C.    Fourteenth Amendment

Plaintiff makes passing reference to a violation of his Fourteenth Amendment rights, presumably a due process right to privacy of medical records.[2] Plaintiff made the same claim in his lawsuit against Ms. Wellman's counsel. The Court's analysis in that case is equally applicable here.

---

[2] Plaintiff also suggests that Defendant violated his Fifth Amendment rights. The Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn*., 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

Although in the broadest sense the Fourteenth Amendment can be read to protect the privacy of personal medical information, *see Whalen v. Roe*, 429 U.S. 589, 599 (1977), the scope of the privacy right depends on context, and in the case of prisoners, is dependent on whether the disclosure of information is reasonably related to a legitimate penological interest. *See Powell v. Schriver*, 175 F.3d 107, 111–112 (2d Cir. 1999). In interpreting *Whalen*, the Sixth Circuit has expressly held that "the Constitution does not encompass a general right to nondisclosure of private information" by government officials. *Doe v. Wiggington*, 21 F. 3d 733, 740 (6th Cir. 1994) (quoting *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981)). The rule established in *DeSanti* precludes any "generic" Fourteenth Amendment claim for the disclosure of private information. *See Treesh v. Cardaris*, No. 2:10-cv-437, 2010 WL 3001738, at *2–4 (S.D. Ohio July 30, 2010); *see also Holden v. Michigan Dep't of Corr*., No. 1:12-cv-284, 2012 WL 2317538, at *5 (W.D. Mich. June 18, 2012) (finding that the disclosure of a prisoner's health and/or HIV status to prison officials and other inmates does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment).[3]

As stated above, Plaintiff contends that his medical records were improperly accessed and used as the basis for a dismissal of his complaint in case No. 2:21-cv-208, which asserted, in part, a violation of his Eighth Amendment rights because of a refusal to provide a religious diet that did not accommodate his soy allergy. *See* Compl., *Middlebrook v. Wellman et al.*, No. 2:21-cv-208 (W.D. Mich. Sept. 23, 2021), (ECF No. 1). Such a claim places his medical condition at issue. The

---

[3] Nor does Plaintiff have Fourth Amendment right to privacy in his medical records. As noted by the Third Circuit in *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001), "[t]he right to nondisclosure of one's medical information emanates from a different source and protects different interests than the right to be free from unreasonable searches and seizures." *Id.* at 316 (noting that such claims are properly analyzed under the Fourteenth Amendment). Therefore, under the facts at issue in this case, it is clear that Defendants' conduct in drawing Plaintiff's blood, testing the blood, and using his medical records did not implicate any Fourth Amendment right.

best evidence regarding the existence of a soy allergy in that case was Plaintiff's medical records, and Defendants were entitled to obtain those records to defend against Plaintiff's allegations. Where a plaintiff has placed his medical condition at issue, a defendant is entitled to review the plaintiff's medical records and conduct *ex parte* interviews with the plaintiff's treating physicians. *See, e.g.*, *Mitchell v. Tennessee*, No. 3:17-cv-00973, 2020 WL 6712169, at *2 (M.D. Tenn. Nov. 16, 2020); *McCormick v. Brzezinski*, No. 08-cv-10075, 2008 WL 4965343, at *3 (E.D. Mich. Nov. 18, 2008).

Plaintiff specifically alleges that the Defendants did not have a legitimate penological interest in testing his blood or disclosing the results. That is a legal conclusion and, thus, need not be accepted as true. Moreover, it is a conclusion that is belied by the circumstances described above.

Plaintiff also invokes the protections of substantive due process. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). For example, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience

and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

No matter how many times Plaintiff repeats his conclusory claim that the testing of his blood and disclosure of the results was "illegal," the end result is only that Plaintiff was tested for a condition he claimed to have and the results of that test were used to defeat a legal claim that Defendants failed to treat that condition. The facts alleged, accepted as true, simply do not "shock the conscience" or implicate the very concept of ordered liberty. Plaintiff therefore has failed to state a claim for violation of his substantive due process rights.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a claim under the Fourteenth Amendment.

### D.     First Amendment Retaliation

Plaintiff makes passing reference to his right to "freedom of speech" and his right to be free of "First Amendment . . . Retaliation." (Am. Compl., ECF No. 8, PageID.56.)

Plaintiff's "free speech" claim is a mystery. The Supreme Court has held that "a prison inmate retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prisoners' free speech rights are "uncontrovertedly limited by virtue of [their] incarceration." *Thaddeus-X*, 175 F.3d at 393. Plaintiff does not allege facts that would support an inference that these Defendants have interfered with Plaintiff's right to freedom of speech. Accordingly, the Court concludes that Plaintiff has failed to state a claim for violation of that right.

15

Plaintiff's retaliation claim is not quite as mysterious. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff filed a civil rights lawsuit. That is protected conduct. *Thaddeus-X*, 175 F.3d at 391, *see also Thomas v. Rochell*, 47 F. App'x 315, 317–18 (6th Cir. 2002).

Plaintiff's claim fails, however, at the second step. Drawing and testing Plaintiff's blood is not adverse action. It would not deter a person of ordinary firmness from engaging in protected conduct. As noted above, it is a minimal intrusion. Because Plaintiff has failed to allege adverse action, he has failed to state a retaliation claim.

### E.   HIPAA Violation

In the initial complaint Plaintiff specifically claims protection from disclosure of the test results based on the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA). He has dropped any reference to HIPAA in the amended complaint and amendment. Nonetheless, to the extent Plaintiff's claims of illegality silently rely on that statute, it must be noted that HIPAA provides no private right of action. *Pitchford v. Metro Nashville Police Dep't,* No. 3:19-cv-00256, 2021 WL 2474461 (M.D. Tenn. June 17, 2021):

> [P]enalties for HIPAA violations are imposed by the Secretary of Health and Human Services ("Secretary"). *See* 42 U.S.C. § 1320d–5(a)(1); *see also Wilson v. Memphis Light, Gas & Water*, No. 12-2956-STA-TMP, 2013 WL 4782379, at *3

(W.D. Tenn. Sept. 5, 2013) (citing *Johnson v. Depts. Of Army and Air Force*, 465 F. App'x 644, 645 (9th Cir. 2012) (affirming dismissal of HIPAA claim on the grounds that HIPAA provides no private right of action); *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011) ("[T]here is no private right of action for a violation of HIPAA's confidentiality provisions."); *Carpenter v. Phillips*, 419 F. App'x 658, 658 (7th Cir.2011) (affirming district court's conclusion that a claim under HIPAA "was not cognizable because HIPAA does not furnish a private right of action"); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir.2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information."); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA."); *Johnson v. Kuehne & Nagel Inc.*, No. 11-cv-02317-STA-cgc, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) ("HIPAA regulations do not confer a private right of action on an individual.")). If the plaintiff believes that a covered entity or business associate is not complying with HIPAA, his only recourse is to file a complaint with the Secretary. *See* 45 C.F.R. § 160.306; *see also Kuehne*, 2012 WL 1022939, at *5 ("Plaintiff's only redress for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services[.]")

*Id.* at *3. Accordingly, any reference to HIPAA would not state a claim against the Defendants.

<u>Conclusion</u>

The Court has conducted a preliminary review of Plaintiff's first amended complaint and amendment as required by the Prison Litigation Reform Act. The Court determines that Plaintiff's complaint will be dismissed as legally frivolous and for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not find that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court declines to certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the applicable appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma*

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the applicable appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   December 1, 2023                              /s/ *Maarten Vermaat*
                                                       Maarten Vermaat
                                                       United States Magistrate Judge